UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CATHERINE JEAN D.,[1]

                                                    Plaintiff,        Case # 20-CV-1581-FPG

v.                                                                         DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                                    Defendant.
_____

## INTRODUCTION

       Plaintiff Catherine D. protectively applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") on or about October 26, 2016, alleging disability beginning November 30, 2015 due to fibromyalgia with chronic nerve pain, enlarged heart, anxiety, and depression. Tr.[2] 101-02. After the Social Security Administration ("SSA") denied her claim, Plaintiff appeared, with an attorney, at a hearing on October 2, 2018, before Administrative Law Judge Roxanne Fuller (the "ALJ"). Tr. 64-100. Plaintiff and a vocational expert testified. Following the hearing, Plaintiff requested that her alleged onset date be amended to July 28, 2016. Tr. 297. On December 17, 2018, the ALJ issued a fully favorable decision. Tr. 112-19. However, on May 22, 2019, the Appeals Council ("AC") notified Plaintiff that it had independently reviewed the ALJ's fully favorable decision and remanded it to the ALJ for further administrative proceedings. Tr. 120-26.

       The ALJ held a second hearing on November 19, 2019, at which Plaintiff and a vocation expert testified. Tr. 34-62. On December 23, 2019, the ALJ issued an unfavorable decision. Tr.

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security decisions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify Plaintiff using only Plaintiff's first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 8.

12-32. The AC denied Plaintiff's request for review on August 31, 2020, making the ALJ's decision the final decision of the SSA. Tr. 1-6. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 10. Plaintiff filed a reply. ECF No. 11. For the reasons that follow, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED. The ALJ's decision is AFFIRMED.

## LEGAL STANDARD

### I.  District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II.  Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that

---

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of his or her age, education, and work experience.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### I.     The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 28, 2016, the amended alleged onset date.  Tr. 18.  At step two, the ALJ found that Plaintiff had the following severe impairments: congenital heart defect; fibromyalgia; and Raynaud's disease.  Tr. 18.  The ALJ determined that Plaintiff's hypothyroidism, hand tremors, and anxiety and depression were medically determinable but not severe.  Tr. 18.  With respect to her anxiety and depression, the ALJ employed the required special technique and analyzed the four broad areas of mental functioning to determine that Plaintiff's anxiety and depression were mild.  Tr. 18-20.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment.  Tr. 20-21.  Next, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[4] except that she can never climb

---

[4] Sedentary work is defined in the regulations as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves

ladders, ropes or scaffolds; can never use ramps or stairs; can never balance; can occasionally stoop; can occasionally balance, stoop, crouch, kneel, crawl, and operate a motor vehicle; and can be occasionally exposed to mechanical parts and unprotected heights. Tr. 21-26.

At step four, the ALJ found that Plaintiff could perform her past relevant work as a data entry clerk, and therefore concluded that Plaintiff was not disabled. Tr. 26-27.

## II.   Analysis

Plaintiff argues that (1) the ALJ failed to incorporate Plaintiff's non-severe impairments of anxiety and depression into the RFC determination; (2) the ALJ mischaracterized Plaintiff's testimony regarding the gap in Plaintiff's mental health treatment to conclude that Plaintiff's mental health impairments were non-severe; and (3) the ALJ improperly elevated her own lay opinion over that of a medical professional when she cherry-picked limitations from Dr. Dantoni's opinion. ECF No. 9-1. The Court disagrees.

### A.   The ALJ Properly Incorporated the Non-Severe Impairments Into the RFC Analysis

Plaintiff's primary argument in support of remand is not that the ALJ erred in concluding that Plaintiff's anxiety and depression were non-severe at step two,[5] but rather that the ALJ failed to incorporate those non-severe impairments into the RFC determination. The Court disagrees.

---

sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[5] The Court pauses to address an issue that the parties did not raise. Plaintiff insinuates that the ALJ concluded that Plaintiff's anxiety and depression were non-severe only after the AC directed her to reconsider her earlier decision that those impairments were severe, but does not argue that the ALJ erred by concluding those impairments were non-severe. ECF No. 9-1. It is not clear whether an ALJ's failure to incorporate non-severe impairments into the RFC analysis is reversible error without an erroneous non-severity finding at step two. In other words, failure to discuss non-severe impairments at steps three and four may be harmful error only if the ALJ erred at step two. Yet, Plaintiff does not argue that the ALJ erred at step two. Nevertheless, the Court will proceed to evaluate whether the ALJ erred in evaluating those non-severe impairments in the rest of her decision.

Once an ALJ determines, as here, that a claimant has at least one severe impairment, she is obligated to "consider all of [Plaintiff's] medically determinable impairments of which [she was] aware, including [Plaintiff's] medically determinable impairments that are not severe," when assessing the RFC.  *See* 20 C.F.R. § 404.1545(a)(2); *Acevedo v. Saul*, 577 F. Supp. 3d 237, 247 (S.D.N.Y. 2021).  The ALJ did so here.  Indeed, the ALJ recounted Plaintiff's testimony regarding her mental impairments, including that she does not like to be around people, that she has a fear of driving, that she writes lists for tasks, and sometimes cries.  Tr. 22.  The ALJ also extensively evaluated the opinions from psychiatric consultative evaluator Christine Ransom, Ph.D. and psychology consultant O. Fassler, Ph.D., both of which indicated that Plaintiff's mental impairments would not significantly limit her.  Tr. 25-26.

Plaintiff argues that the ALJ erred because she did not incorporate mental limitations into the RFC after concluding that those impairments were non-severe.  But the law only requires the ALJ to *evaluate* non-severe impairments in the RFC analysis, not to include limitations in the RFC.  *Acevedo*, 577 F. Supp. 3d at 247 ("So long as a non-severe impairment is considered in assessing a claimant's RFC at steps three and four, any improper labeling of an impairment or combination of impairments as non-severe is not reversible error.").  To hold otherwise would defy logic: *requiring* an ALJ to limit a claimant's ability to work due to a non-severe impairment suggests that the non-severe impairment causes significant work limitations, which runs counter to the non-severity finding.  That the ALJ did not include mental health limitations in the RFC here is a function of Plaintiff's anxiety and depression having little to no impact on Plaintiff's ability to work.

    B.    **The ALJ's Treatment of Plaintiff's Testimony**

Plaintiff next contends that the ALJ improperly drew a negative inference from Plaintiff's testimony, which Plaintiff says the ALJ mischaracterized. However, the record demonstrates that the ALJ did not misconstrue Plaintiff's testimony.

In evaluating Plaintiff's mental health impairments, the ALJ noted that Plaintiff had a "gap in her mental health treatment records of more than two years from March 2017 to October 2019." Tr. 20. The ALJ recounted that Plaintiff had testified that this gap was attributable to her husband's loss of insurance. Tr. 20. But, the ALJ explained, Plaintiff "admitted to having insurance from March 2017 to about July or August 2018 and she did not provide an explanation for her lack of treatment during this period." Tr. 20. Indeed, Plaintiff testified that she lost insurance in "July or August of '18." Tr. 44. When the ALJ asked why there was such a big gap in her mental health treatment for the period during which she *did* have insurance, Plaintiff simply answered, "Well, I, I didn't, I didn't want to go back to her. She wasn't actually helping me." Tr. 44. Certainly, that is *a* reason for the gap in the record, but it does not support Plaintiff's contention that her mental health issues were severe.

### C. Dr. Dantoni's Opinion

Finally, Plaintiff suggests that the ALJ cherry-picked an opinion from Susan Dantoni, M.D., who found that Plaintiff was limited to sedentary work, but also that she was limited to never balancing, stooping, crouching, crawling, or reaching with her right arm. Tr. 25. The ALJ adopted Dr. Dantoni's opinion that Plaintiff was limited to sedentary work, but gave "little weight" to her opinion that Plaintiff could never balance, stoop, crouch, crawl, or reach with her right arm. Tr. 25.

To be sure, "[w]hen an ALJ adopts only parts of a medical opinion, he must explain why the other parts are rejected." *Lori M. v. Comm'r of Soc. Sec.*, 2021 WL 230916, at *4 (W.D.N.Y.

Jan. 22, 2021) (citation omitted).  That is what the ALJ did here.  She explained that although Dr. Dantoni found that Plaintiff's body was tender, she also observed that Plaintiff had 5/5 motor strength in her extremities, she could perform a full squat, use no assistive device, needed no help rising from a chair, and had full range of motion in her neck, shoulders, elbows, wrist, hands, knees, ankles, and feet.  Tr. 25, 649-53.  The ALJ concluded that "[t]hese factors indicate that the claimant is not as limited as Dr. Dantoni alleged."  Tr. 25.  The Court agrees that the ALJ's explanation for why she accepted some of Dr. Dantoni's opinion and rejected other portions is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 9, is DENIED, and the Commissioner's motion for judgment on the pleadings, ECF No. 10, is GRANTED.  The ALJ's decision is AFFIRMED.  The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 9, 2022
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York